Gerald HALL, Plaintiff,

v.

ENVIRONMENTAL CHEMICAL
CORP., Defendant.

No. Civ.A. G–99–262.

United States District Court,
S.D. Texas,
Galveston Division.

Sept. 13, 1999.

Richard Joseph Plezia, Abraham Watkins Nichols and Friend, Houston, TX, for Gerald Hall, plaintiff.

Thomas C. Fitzhugh, III, Fitzhugh and Elliott, Houston, TX, John C. Elliott, Fitzhugh & Elliott, Houston, TX, for Environmental Chemical Corp, defendant.

### ORDER DENYING MOTIONS TO DISMISS OR TRANSFER VENUE

KENT, District Judge.

Plaintiff Hall brings this action against Defendant Environmental Chemical Corp. for personal injuries arising under the Jones Act and general maritime law. The injuries allegedly occurred on November 10, 1997 aboard a barge named PACIFIC. Now before the Court is Defendant's Motion to Dismiss or Transfer filed August 5, 1999. For the reasons stated below, and despite being well prepared and cleverly argued, the Motion to Dismiss or Transfer is **DENIED.**

### I. FACTUAL SUMMARY

In July of 1997, Defendant recruited and hired Plaintiff, who resides in Galveston County, Texas, to work as a machine operator for a remediation project on Palmyra Island, a possession of the United States that lies a thousand miles south of the State of Hawaii. To house its workers, Defendant chartered the barge PACIFIC for use on the waters adjacent to Palmyra Island. For approximately ten days, Plaintiff traveled on a tug boat that transported the PACIFIC from Honolulu, Hawaii to Palmyra Island. Upon arrival at Palmyra Island, Plaintiff alleges that his duties on the barge included operating a crane affixed to the barge, as well as assisting in the mechanical maintenance of the PACIFIC. On November 10, 1997, Plaintiff suffered physical injuries aboard PACIFIC while ascending a ladder that was connected to the barge crane. Upon returning to Texas, Plaintiff began to receive medical care for his alleged injuries, which was initially paid for by Defendant. At the end of 1998, however, Defendant terminated what Plaintiff characterizes as his maintenance and cure benefits. On April 28, 1999, Plaintiff filed suit against Defendant, asserting claims under the Jones Act and general maritime law.

### II. SUBJECT MATTER JURISDICTION

Defendant first seeks dismissal based upon a lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1). The Court finds this assertion patently untenable. For admiralty jurisdiction to exist over a tort action, the claim must have both a maritime locality and a con-

nection to maritime activity. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995). The locality requirement is satisfied when the incident forming the basis of the claim occurs on navigable water. *See Three Buoys Houseboat Vacations U.S.A. v. Morts*, 921 F.2d 775, 777 (8th Cir.1990). The connection, or nexus, prong is satisfied when the general character of the activity giving rise to the incident bears a "significant relationship to traditional maritime activity" and is of a general type that could have a potentially disruptive impact on maritime commerce. *Grubart*, 513 U.S. at 538, 539–40, 115 S.Ct. at 1048, 1051 (citing *Sisson v. Ruby*, 497 U.S. 358, 363, 110 S.Ct. 2892, 2896, 111 L.Ed.2d 292 (1990)).

■ Here, Defendant attempts to characterize Plaintiff's case as falling beyond the scope of admiralty jurisdiction, alleging that: (1) Plaintiff's injuries suffered aboard PACIFIC did not occur in the scope of employment, (2) the PACIFIC was not engaged in maritime commerce, and (3) Plaintiff's connection with the PACIFIC did not expose him to maritime hazards. However, based upon the facts presently known to the Court, the Court remains utterly unpersuaded by Defendant's arguments. Defendant's Motion does not challenge the locality requirement, therefore, for the purposes of a Rule 12(b)(1) finding, the Court finds sufficient evidence in the Plaintiff's pleadings to support the claim that Plaintiff's injuries occurred on a navigable waterway. The Court also finds that the alleged facts of this case satisfy the maritime nexus prong. Plaintiff alleges that his injuries occurred in direct connection with his operation of a crane attached to the PACIFIC and arose from the unseaworthiness condition of the barge. An injury to a barge crane operator has a potentially disruptive impact on maritime commerce in that it could delay the transfer of goods, material, and cargo to and from the barge. Moreover, given that the barge crane served as the only one in the area, the crane served a vital purpose to Defendant's operation—one commensurate with activities expected to be performed on a barge. *See id.*, at 538, 539–40, 115 S.Ct. at 1051 (explaining that the general character of the activity giving rise to the incident should bear a "substantial relationship to traditional maritime activity"). Hence, the Court finds a sufficient connection to maritime activity to invoke admiralty jurisdiction.[1]

Because this cause of action is cognizable under admiralty jurisdiction, the Court accordingly **DENIES** Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction.

### III. JURISDICTIONAL ISSUES RELATED TO 48 U.S.C. § 644a

■ Defendant next argues that jurisdiction over this dispute lies exclusively in

---

1. Some debate also exists concerning whether Plaintiff qualifies as a seaman under the Jones Act. According to Plaintiff's pleadings and submitted affidavits, part of his job responsibilities included operating the crane attached to the PACIFIC. In evaluating seaman status, the particular job performed by the plaintiff is not important, as long as the plaintiff's duties contribute to the function of the vessel. *See McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 346, 111 S.Ct. 807, 813, 112 L.Ed.2d 866 (1991). In this case, Plaintiff appears to meet this condition. The PACIFIC served both to house the workers participating on the Palmyra project and to transfer material and goods to and from the island. Although Plaintiff signed a contract agreeing not to participate in navigational responsibilities or crew duties, Plaintiff nevertheless claims that a part of his job responsibilities while assigned to Palmyra was, in fact, to operate the barge crane. Additionally, Plaintiff states that he also performed a variety of other duties aboard the PACIFIC, which included: assisting the barge engineer in maintaining the barge generator; working on the water makers; assisting in the maintenance of the barge's hydraulic and electric motors; and traveling up to ten miles on open water to dispose of the raw sewage produced on the barge. Taken together, this Court finds that these activities clearly supported the functions of the barge and therefore appear sufficient to attach seaman status to Plaintiff at the time of his injuries, contract notwithstanding.

the District Court of Hawaii. This Court disagrees. Although Defendant points with sincerity to the legislative history of 48 U.S.C. § 644a, Defendant's argument is simply not supported by the plain language of the statute. Section 644a provides, in relevant part, that "[t]he jurisdiction of the United States District Court for the District of Hawaii is extended to all civil and criminal cases arising on or within ... Palmyra Island...." 48 U.S.C. § 644a. Despite whatever arguments Defendant derives from the legislative history of this statute, it remains clear that if Congress desired to vest *exclusive* jurisdiction in the District Court of Hawaii, it could easily have included language indicating as much. In fact, Congress has in the past taken particular care to denote when specific courts have exclusive jurisdiction. *See* e.g., 12 U.S.C. § 2278b–4(b) (1994) (granting exclusive jurisdiction to the United States District Court for the District of Columbia over civil actions taken against Board members of the Farm Credit Administration's Financial Assistance Corporation); 15 U.S.C. § 719h(c)(1) (1994) (extending exclusive jurisdiction to the United States Court of Appeals for the District of Columbia as a Special Court in certain matters relating to claims brought against the Federal Power Commission for activities related to the construction and operation of the Alaska Natural Gas Pipeline Transportation System); 31 U.S.C. § 301(b)(1) (1994) ("The United States District Court for the District of Columbia shall have exclusive jurisdiction over [civil actions taken against the Secretary of the Treasury], without regard to the sum or value of the matter in controversy."); 44 U.S.C. § 301 (Sec.105(a) ("The United States District Court for the District of Columbia shall have exclusive jurisdiction to hear challenges to the legal or constitutional validity of this title or of any regulation issued under the authority granted by this title....").

In this situation, however, a careful examination of 48 U.S.C. § 644a reveals that Congress chose not to insert a provision designating the District Court of Hawaii as possessing exclusive jurisdiction to resolve disputes relating to activities occurring on the waters adjacent to Palmyra Island. *C.f.* H.R.Rep. No. 76–2573, at 1 (1940) (noting that the primary concern for enacting the original legislation revolved around providing a forum for litigation that would apply United States law to actions committed on United States possessions such as Palmyra Island); *see also Jackman v. Asiatic Petroleum Corp.*, 34 Misc.2d 492, 228 N.Y.S.2d 720, 723 (N.Y.Sup.Ct.1962) (recognizing that § 644a lacks "an express statutory provision that the jurisdiction of the Hawaiian District Court shall be exclusive"). Consequently, Defendant's contention, under 48 U.S.C. § 644a, that this Court lacks jurisdiction to preside over this case is **DENIED**.

## IV. PERSONAL JURISDICTION

■ Defendant is a Kentucky corporation with its principal place of business outside of Texas. Defendant seeks dismissal pursuant to Fed.R.Civ.P. 12(b)(2), contending that this Court lacks personal jurisdiction over it. In federal court, personal jurisdiction over a nonresident defendant is proper when: (1) the defendant is amenable to service of process under the forum state's long-arm statute, and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *See Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). The Texas long-arm statute authorizes service of process on a nonresident defendant if the defendant is determined to be "doing business" in Texas. *See* Tex. Civ.Prac. & Rem.Code Ann. § 17.042. Because the phrase "doing business" has been interpreted to reach as far as the United States Constitution permits, the jurisdictional inquiry under the Texas long-arm statute collapses into a single due process inquiry. *See Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir.1993); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356–57 (Tex.1990).

■ Whether the exercise of personal jurisdiction over Defendant is consistent with the Due Process Clause of the United States Constitution likewise requires a two-pronged inquiry. First, the Court must conclude that Defendant has "minimum contacts" with Texas. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Second, the Court must determine that requiring Defendant to litigate in Texas does not offend "traditional notions of fair play and substantial justice." *Id.; see also Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.1994); *Ruston*, 9 F.3d at 418.

The "minimum contacts" aspect of due process can be satisfied by either finding general jurisdiction or specific jurisdiction. *See Wilson*, 20 F.3d at 647. For general jurisdiction, the defendant's contacts with the foreign state must be both "continuous and systematic" and "substantial." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984); *Villar*, 990 F.2d at 1496. Specific jurisdiction exists over a non-resident defendant if the defendant has "'purposely directed'" his activities at the residents of the forum, and the litigation results from alleged injuries that 'arise from or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *see Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958); *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1496 (5th Cir.1993). The critical inquiry for specific jurisdiction, therefore, concerns whether the defendant, by directing activities to the forum state, purposefully availed itself of the privilege of conducting activities within the forum state, thereby "invoking the benefit and protection of its laws." *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. at 2182. Ultimately, the defendant's connection with the forum state must be of such a nature that the defendant should reasonably anticipate being haled into court in that state. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir.1986). But a single contact with the forum state can be sufficient to support specific jurisdiction. *See Ruston*, 9 F.3d at 419.

■ At the outset, the Court notes that although the burden is on Plaintiff, he need only make a prima facie showing of jurisdiction, and his allegations in that regard are to be taken as true unless controverted; moreover, any conflicts are to be resolved in Plaintiff's favor. *See Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 785 (5th Cir.1990).

A. *Defendant's Contacts*

■ Recognizing the limited amount of discovery conducted thus far by both parties regarding jurisdictional issues, the Court nevertheless notes several factors that support its finding that Defendant's contacts in Texas are sufficient to clear the personal jurisdictional hurdle. While the evidence remains too incomplete to rule on general jurisdiction matters at the present time, it is evident to this Court that specific jurisdiction is applicable because this action arises out of contacts that Defendant has had with the state of Texas.

Plaintiff, in the instant case, is a resident of Galveston County, Texas. Defendant characterizes its contact with the Texas forum as limited to an alleged single act of recruitment. However, in evaluating the facts in a light most favorable to Plaintiff, this Court finds that based on the Defendant's contacts with the Texas forum, it is reasonable for specific jurisdiction to attach. Plaintiff asserts that sometime prior to July 18, 1997, Defendant began contacting Plaintiff by phone about possible employment opportunities outside of Texas. As a result of this recruiting effort, which occurred in Texas, Plaintiff agreed to work for Defendant. Pursuant to that oral agreement, Defendant mailed an employment contract to Plaintiff's home address in Texas, and Plaintiff signed the contract soon thereafter. Plaintiff began a training program that required Plaintiff to travel outside of Texas, and Defendant covered all transportation and lodging expenses. Furthermore, during the time of Plaintiff's employment, Defendant mailed

all paychecks to Plaintiff's place of residence. In sum, Defendant specifically chose to target the Texas market for employment prospects and as a result hired Plaintiff. But that is not the end of the story, for after his injury on the PACIFIC, Plaintiff returned to Texas to receive medical treatment. Plaintiff alleges that Defendant paid Plaintiff's medical expenses through the end of 1998, but then terminated such payments in violation of Defendant's maintenance and cure duties under the general maritime law. Plaintiff also asserts that during his convalescence Defendant once again contacted Plaintiff at his home in an attempt to recruit him to return to work on the Palmyra project. As a result of these various contacts, this Court finds that Defendant has purposely availed itself of the privilege of conducting recruitment and employment activities in Texas, thereby meeting the requirements for specific jurisdiction under the first prong of *International Shoe* and its progeny. *See Coats v. Penrod Drilling Corp.,* 5 F.3d 877, 822–85 (5th Cir.1993) (recognizing specific jurisdiction based upon the defendant's purposeful availment of the Mississippi forum, which included, among other things, the defendant: recruiting the plaintiff in Mississippi; agreeing to transport the plaintiff back to Mississippi; and returning the plaintiff to Mississippi for medical treatment paid for by the defendant), *reh'g granted en banc,* 20 F.3d 614 (5th Cir.1994), *relevant part reinstated,* 61 F.3d 1113 (5th Cir.1995).[2]

## B. *Fair Play and Justice*

The Court further concludes that the exercise of jurisdiction over Defendant would not offend "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. To satisfy the Constitution, there must exist a sufficient relationship between the defendant and the forum state that it would be "reasonable ... to require the corporation to defend the particular suit which is brought there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). In evaluating the reasonableness issue, the Court looks to the burden on the defendant, the interests of the forum state, the judicial system's interest in efficient resolution, the plaintiff's interests in obtaining relief, and the shared interest of the several states in furthering "fundamental substantive social policies." *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987); *see Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 377 (5th Cir. 1987).

In this case, Texas clearly has an interest in adjudicating a dispute between Plaintiff, who is a Texas resident, and a company that recruits and hires Texas residents for employment opportunities, and pays for the medical costs of injured workers when they return to Texas. Based on the location of accident, this Court also is cognizant of the resulting inconvenience and unfairness to the resident Plaintiff if he is not afforded a local forum for resolution of disputes such as the one *sub justice.* In this vein, the Court rejects the notion that trial of this matter in Texas is a burden on a corporation such as Environmental Chemical Corp., particularly if

---

**2.** Defendant relies on *Van Pelt v. Best Workover,* 798 S.W.2d 14 (Tex.App.—El Paso 1990, no writ), for the proposition that when the defendant's only contacts involve recruitment activities in Texas, courts may exercise specific jurisdiction only if the plaintiff's cause of action stems from that act of recruitment. *Id.* at 16. *Van Pelt,* however, is distinguishable. In *Van Pelt,* the trial court found that defendant's only contact with the Texas forum concerned an initial recruitment call made to plaintiff, whereas in this case Defendant's contacts began with recruitment and extended to the termination of medical expenses, in possible violation of Defendant's duties to provide maintenance and cure under the general maritime law. Therefore, unlike the claims asserted by the plaintiff in *Van Pelt,* one of the major contentions driving Plaintiff's suit in this case—the termination of Plaintiff's medical benefits—arose in Texas and is directly related to Defendant's activities within the Southern District of Texas.

the facts ultimately reveal that Defendant has indeed pursued other business activities in Texas. Finally, because of its multiple contacts with Plaintiff in Texas (as well as the fact that Defendant maintains a registered agent in Texas for service of process), Defendant could "reasonably anticipate" being hailed into court in Texas, even though the alleged accident actually occurred off the coast of Palmyra.

After careful consideration of the totality of the circumstances, the Court concludes that personal jurisdiction exists over Defendant in this action and that the exercise of jurisdiction would be consistent with Constitutional requirements. Accordingly, the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is hereby **DENIED.**

## V.  MOTION TO TRANSFER VENUE

Turning now to Defendant's Alternative Motion to Transfer Venue, 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under this statute, the party seeking the transfer of venue bears the burden of demonstrating that the Court should, in its sound discretion, transfer the action. *See Peteet v. Dow Chemical Co.,* 868 F.2d 1428, 1436 (5th Cir.1989) (noting that the decision to transfer a case rests exclusively within the sound discretion of the district court); *Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir.1966) (highlighting that the movant bears the burden of demonstrating that the action should be transferred).

In attempting to meet this burden, Defendant maintains that this case should be transferred to the District of Hawaii because: (1) the injury occurred on the water off the coast of Palmyra; (2) Plaintiff chose to initially file this action in Texas state court; (3) Defendant does not maintain their principal places of business in the Southern District of Texas, nor are their business operations headquartered in

Texas; (4) three fact witnesses reside outside of Texas.

When considering whether a transfer is warranted, the Court considers the following factors: the availability and convenience of witnesses and parties; the location of counsel; the location of books and records; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the possibility of delay and prejudice if transfer is granted; and the plaintiff's choice of forum. *See, e.g., Henderson v. AT & T Corp.,* 918 F.Supp. 1059, 1065 (S.D.Tex. 1996); *Dupre v. Spanier Marine Corp.,* 810 F.Supp. 823, 825 (S.D.Tex.1993); *Hogan v. Malone Lumber, Inc.,* 800 F.Supp. 1441, 1443 (E.D.Tex.1992); *United Sonics, Inc. v. Shock,* 661 F.Supp. 681, 682–83 (W.D.Tex.1986). Generally, a plaintiff's choice of forum is entitled to great deference. *See Continental Airlines, Inc. v. American Airlines, Inc.,* 805 F.Supp. 1392, 1395–96 (S.D.Tex.1992) (discussing the importance of the plaintiff's choice of forum in light of the policies underlying § 1404(a)); *United Sonics,* 661 F.Supp. at 683 (stating that the plaintiff's choice of forum is "most influential and should rarely be disturbed unless the balance is strongly in defendant's favor"). After evaluating each of the aforementioned factors, this Court finds Defendant's arguments for transfer again patently untenable.

### A.  *Availability and Convenience of Witnesses and Parties*

The Court has previously stated that the convenience of key witnesses is the most important factor in a motion to transfer venue. *See Continental Airlines,* 805 F.Supp. at 1396. Here, although Defendant refers to three potential witnesses, none of these individuals are identified as key witnesses who will likely testify to the facts surrounding the accident. Instead, according to the affidavits attached to the Defendant's motions, these witnesses will likely testify about the Plaintiff's general

job responsibilities, which is unrelated to facts underlying the injury involved in this case.[3] As for the plaintiff, who resides in the Southern District of Texas, his testimony will serve an important role in determining the events leading up to his accident. Moreover, the Court notes that Plaintiff has received all of his medical treatment resulting from the accident in the Southern District of Texas and presumably, at the very least, Plaintiff's primary treating physician will appear either live or by deposition. Defendant has failed to demonstrate how bringing the Plaintiff and his doctors, who apparently serve as the only key witnesses and who all hail from Texas, to the District of Hawaii is more convenient than conducting the trial here in Galveston. Thus, as to these key witnesses, Galveston is clearly a more convenient venue than Hawaii.

And while Defendant stresses its three witnesses located outside of Texas, the Court reiterates that the convenience of key witnesses who are employees of Defendant is "entitled to less weight because that party will be able to compel their testimony at trial." *Id.* at 1397; *see Dupre*, 810 F.Supp. at 825. This certainly applies to Mr. Minutoli, who continues to work for Defendant.[4] Furthermore, the Court "vigorously exercises its authority under FED.R.EVID. 403 and 611(a) to ensure that each witness' testimony is as concise as possible and that cumulative and redundant testimony is kept to a minimum[,]" thereby restricting the time that the witnesses are absent from their jobs to an "absolute minimum." *Continental Airlines*, 805 F.Supp. at 1397; *Dupre*, 810

F.Supp. at 827. Finally, the Court liberally construes Fed.R.Civ.P. 32 to allow depositions wherever convenient. Accordingly, this factor does not weigh heavily in favor of transfer.

### B. *Location of Counsel*

Counsel for both parties office in the Southern District of Texas. Although this factor is not of primary importance, the Court does "give some weight to location of counsel if Plaintiff chooses local counsel to bring the suit." *Dupre*, 810 F.Supp. at 826. Thus, Defendant's counsel cannot persuasively claim they will be inconvenienced before this Court. This factor militates against transfer and supports trial of this case in Galveston.

### C. *Location of Parties*

When determining the relative conveniences of transfer, the Court also considers the residences of the parties in the action. Here, the Plaintiff lives in Galveston County. While Defendant's home offices are not in Texas, they did contact and recruit Plaintiff in Texas to accept an offer of employment; indeed Plaintiff was hired by Defendant in Texas and Defendant has paid for a portion of the Plaintiff's medical bills incurred here in the Southern District. Defendant also attempted to recruit Plaintiff to complete the work project in Palmyra after Plaintiff had returned to Texas. Because it voluntarily received benefits arising from contacts with Plaintiff in Texas, and maintains an agent for service here, Defendant cannot persuasively claim that it will be inconvenienced by

---

3. Additionally, Defendant represents to this Court that all three of these witnesses live and work in Hawaii. Their affidavits, however, do not indicate their places of residence. And curiously, a close inspection of the affidavits reveals that none of the potential witnesses listed by Defendant had their affidavits executed in Hawaii: Mr. Bassarab's affidavit was performed in Houghton County, Michigan, Mr. McCaskill's in the Northern Mariana Islands, and Mr. Minutoli's in San Mateo County, California. If it turns out that these individuals do not, in fact, all live and work in

Hawaii, then traveling from Michigan and California to Galveston would involve shorter trips than trekking off to Honolulu.

4. As for Mr. Bassarab and Mr. McCaskill, their affidavits use the term "was" to describe their employment relationship with Defendant. This Court is unsure of their present employment status with Defendant, but nevertheless refers to the other factors discussed in support of its finding that Galveston remains a more convenient forum than Honolulu.

having to litigate in this Court. This conclusion will be buttressed if evidence reveals that Defendant has conducted other business activities within Texas. Further, the citizens of this Division have a clear interest in seeing that out-of-state employers provide appropriate medical services for Texas workers injured abroad.

### D. *Location of Books and Records*

Defendant does not contend that the location of records is of paramount importance in this case, and for good reason. *See Dupre*, 810 F.Supp. at 826–27 (noting that a personal injury action is typically not the type of action in which the location of books and records is extremely necessary, and stating that "the liability question is usually proven through eye witnesses rather than documents and the damages issue . . . [and] usually does not involve enough documents as to be an overwhelming factor"). And if any records located outside of Texas become an issue, the Court finds little inconvenience inherent in bringing, if necessary, those records to Galveston. *See Continental Airlines*, 805 F.Supp. at 1397 (observing that in a personal injury case "it is unlikely at all . . . [that] relevant documents will be needed for trial and . . . [could] be produced and examined anywhere for discovery purposes").

### E. *Location of the Alleged Wrong*

Defendant emphasizes that Plaintiff was injured on water off Palmyra Island. This factor supports transfer. However, although the place of the alleged wrong is an important factor to consider when deciding whether to transfer venue, it is not the sole factor. *See Dupre*, 810 F.Supp. at 824. Defendant has in fact hired a worker from their community to participate in its Palmyra operation, and then attempted to reengage negotiations for Plaintiff to resume work in Palmyra. Most importantly, Defendant's termination of Plaintiff's medical expenses occurred in the Southern District. Thus, the Court finds that the residents of the Southern District of Texas have more than a passing interest in the

outcome of this litigation and the treatment of its workers by the Defendant. *Cf. Continental Airlines*, 805 F.Supp. at 1399 ("Plaintiffs alleged Defendants engaged in . . . violation of the . . . law; to the extent residents in the Galveston Division suffered from these actions . . . it cannot be said that they have no interest in the outcome of this litigation.").

### F. *Possibility of Delay and Plaintiff's Choice of Forum*

Plaintiff's choice to litigate this case in the Galveston Division of the Southern District of Texas is entitled to great deference. *See United Sonics*, 661 F.Supp. at 683. Furthermore, "[t]he possibility of delay or prejudice if the case is transferred will always play a large role in this Court's analysis." *Dupre*, 810 F.Supp. at 828. A transfer of venue out of the Galveston venue may well result in the Plaintiff's losing the benefit of this Court's expeditious and cost-efficient manner of handling cases, including this Court's shorter trial track, which is well below the average of other courts in the area. *See United Sonics*, 661 F.Supp. at 683; *Dupre*, 810 F.Supp. at 828 (espousing that a prompt trial "is not without relevance to the convenience of parties and witnesses and the interest of justice"). Although Defendant has the burden to demonstrate that transfer is proper, it has failed to establish any valid basis that warrants subjecting this case to the delays inherent in any transfer to any District. *See Sanders v. State Street Bank and Trust Co.*, 813 F.Supp. 529, 536 (S.D.Tex.1993).

After careful consideration of all the specific facts and relevant factors in this case, the Court concludes that Defendant has offered no compelling reasons for transfer to the District of Hawaii and has therefore failed to carry its burden of demonstrating that a transfer is necessary to serve the interests of justice. In light of the fact that Defendant recruited and hired Plaintiff in the Southern District of Texas, and that both Plaintiff and key

witnesses reside in the Southern District of Texas, this forum appears to be as reasonable a choice as any for litigation of this case. Thus, the Court declines to disturb the forum chosen by Plaintiff and to introduce the likelihood of delay inherent in any transfer simply to avoid the insignificant inconvenience that Defendant may suffer by litigating this matter in Galveston rather than in Hawaii. Accordingly, Defendant's Motion to Transfer is **DENIED.**

## VI.  CONCLUSION

In evaluating jurisdictional and venue issues, this Court has long construed plaintiffs' complaints on their face to determine if a prima-facie cause of action exists. As always, however, the Court will consider dispositive relief in due course. Therefore, by denying relief under Rule 12(b), this Court is not preventing Defendant from pursuing summary judgment under Rule 54 at a later date. But this Court reminds all parties that if the facts fail to support summary relief, it should not be requested.

**IT IS SO ORDERED.**