**Opinion issued October 21, 2021**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-21-00015-CV**

———————————

**WEEKS MARINE, INC., Appellant**

**V.**

**MARIO CARLOS, Appellee**

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-34256**

## MEMORANDUM OPINION

Mario Carlos sued Weeks Marine, Inc. for injuries he allegedly sustained in two separate incidents while working on vessels owned by Weeks Marine. Weeks Marine filed a special appearance asserting that the court had neither general nor specific jurisdiction over it because Texas is not its principal place of business and

because there is no substantial connection between the operative facts of the litigation and Weeks Marine's contacts with Texas. The trial court denied the special appearance, and Weeks Marine appealed.

We affirm.

## Background

Weeks Marine is incorporated in New Jersey, where its headquarters and principal place of business are located. It has offices in numerous states, including an office related to its construction division located in Houston, Texas. It has a registered agent for service of process in Texas. In the late 1990s, Weeks Marine purchased T.L. James.

Mario Carlos had worked for T.L. James in the early 1990s. After Weeks Marine acquired T.L. James in 1998, it contacted Carlos in Texas to offer him employment, which was conditioned on a physical and drug test. According to Carlos, Weeks Marine scheduled and paid for him to have a preemployment physical and drug test in Hidalgo County, Texas. Weeks Marine then made a firm offer of employment, which Carlos accepted in Texas. Carlos worked for Weeks Marine between approximately 1998 and 2020. In his affidavit, Carlos averred that after completing a job for Weeks Marine, he would return home to Texas. He stated that on 20 to 27 separate occasions, Weeks Marine contacted him in Texas to "recruit" him to work on another job. Carlos said that after each acceptance, Weeks Marine

2

paid for a physical and drug test in Hidalgo County. In addition, Weeks Marine "always paid" him in Texas, where his bank account was located. Carlos also swore that Weeks Marine agreed that, should he be injured on-the-job, his medical care would take place in Texas.

Weeks Marine paid Carlos a per diem to cover his expenses while traveling between Texas and the job location. Carlos stated that he often traveled to job locations with other Texas residents who had been hired by Weeks Marine, including Facundo Salazar, who happened to be Carlos's nephew and who worked as a supervisor for Weeks Marine. Carlos said that Salazar lived in the Rio Grande valley and that he and Salazar frequently traveled together to training and testing for Weeks Marine, which occurred in Texas.

In his second amended petition, Carlos alleged that he was injured in two separate workplace incidents in November and December 2019. In November 2019, Carlos was working on *Barge 232*, which was in the Mississippi River near the Port of New Orleans. Salazar, who was Carlos's supervisor, allegedly ordered him to modify a piece of equipment to complete a task involving the tightening of bolts. Carlos alleged that the modification increased the power to the tool, dislocating a bolt that struck his face. Carlos lost several teeth from the impact and suffered a serious neck injury. He received medical care in Louisiana and returned to work on the vessel.

3

In December 2019, Carlos was working on the dredging vessel *Captain Frank*, which was located in the New Zydeco Ridge near Slidell, Louisiana. According to Carlos, Salazar was again the supervisor on this job, and Salazar directed him to complete a task that required him to use a ladder. Carlos maintains that Salazar told him to do the task on his own, despite safety standards that require the presence of another person while using a ladder. Carlos fell from the ladder and allegedly injured his back. He returned to Texas and has received medical care in Harris County, Texas.

Carlos filed suit against Weeks Marine seeking damages stemming from the two on-the-job injuries he alleged were caused by Weeks Marine's flawed hiring and training practices. He also alleged a related but distinct claim that Weeks Marine delayed or failed to make statutorily required "maintenance and cure" payments. He alleged that the failure to timely pay maintenance and cure caused him additional damages. In his live pleading, he alleged that Weeks Marine was liable under the Jones Act, general maritime negligence, and "unseaworthiness." He also sought "maintenance and cure" payments, which is a statutory remedy under the Jones Act that provides supplemental income and payment for some medical expenses. Though related to his claims for damages from his on-the-job injuries, Carlos's maintenance and cure claim is distinct.

Weeks Marine filed a special appearance, challenging both general and specific jurisdiction. Carlos twice amended his petition, and Weeks Marine likewise amended its special appearance. After a non-evidentiary hearing, the trial court denied the special appearance without findings of fact or conclusions of law. Weeks Marine appealed. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7) (providing that party may take interlocutory appeal from order denying special appearance).

## Analysis

On appeal, Weeks Marine argues that neither general nor specific jurisdiction exist in this case. Carlos argues that specific jurisdiction exists. We agree with Carlos.

## I.    Standard of review

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. June 25, 2021); *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). The plaintiff has "the initial burden to plead sufficient allegations to confer jurisdiction." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009); *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002). "The defendant seeking to avoid being sued in Texas then has the burden to negate all potential bases for jurisdiction pled by the plaintiff." *Retamco Operating*, 278 S.W.3d at 337. "When, as here, the trial

court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013).

## II. Personal Jurisdiction

"A court must have both subject matter jurisdiction over a case and personal jurisdiction over the parties to issue a binding judgment." *Luciano*, 625 S.W.3d at 7–8. Personal jurisdiction refers to a court's authority "to bind a particular party" to its judgment. *Id.* at 8. Texas courts may exercise personal jurisdiction over a nonresident when (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal due process guarantees. *Old Republic*, 549 S.W.3d at 558. "Federal due-process requirements limit a state's power to assert personal jurisdiction over a nonresident defendant." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). "Personal jurisdiction is proper when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) and *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945)).

### A. General personal jurisdiction requires that the defendant be "at home" in the forum state.

Personal jurisdiction may be general or specific. *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024 (2021). A court exercising general personal jurisdiction may hear any and all claims against a nonresident defendant. *Id.* A court may exercise general personal jurisdiction over a nonresident defendant when the defendant is "essentially at home" in the forum state. *Id.*; *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation is "essentially at home" in its place of incorporation, its principal place of business, and—rarely—when a corporation's contacts with the forum state are so substantial, continuous, systematic, and of a such a nature that general jurisdiction is justified. *See Ford Motor Co.*, 141 S. Ct. at 1024; *Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014).

### B. Specific personal jurisdiction requires sufficient minimum contacts with the forum state.

"Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co.*, 141 S. Ct. at 1024. A court exercising specific personal jurisdiction may hear claims that arise out of or relate to the nonresident defendant's contacts with the forum state. *Id.* at 1025 (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017)). In the context of specific personal jurisdiction, minimum contacts requires that (1) the nonresident defendant has purposefully availed itself of the privilege of conducting activities in the forum state, and (2) there

exists a "nexus between the nonresident defendant, the litigation and the forum."

*Luciano*, 625 S.W.3d at 8, 14 (quoting *Moki Mac River Expeditions*, 221 S.W.3d at 579).

### 1. Purposeful availment

We consider three factors to determine whether a nonresident defendant has purposefully availed itself of the privilege of conducting activities in Texas:

> ***First***, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. ***Second***, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. Thus, sellers who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to the jurisdiction of the latter in suits based on their activities. ***Finally***, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Moncrief Oil Int'l*, 414 S.W.3d at 151 (emphasis added) (quoting *Retamco*, 278 S.W.3d at 338–39; *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 475 (1985). We consider all of the evidence and focus on "the quality and nature of the contacts, not the quantity." *Moncrief Oil*, 414 S.W.3d at 151; *see Bristol-Myers Squibb*, 137 S. Ct. at 1779.

### 2. Relatedness

The relatedness—or nexus—component of minimum contacts requires that there be a connection between the nonresident defendant's purposeful contacts in Texas and the plaintiff's suit. *Luciano*, 625 S.W.3d at 14. However, it does not require a strict causal relationship between the defendant's in-state activity and the

litigation. *Id.* at 14–15. Instead, the relatedness inquiry demands only that the suit "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co.*, 141 S. Ct. at 1026 ("[W]e have never framed the specific jurisdiction inquiry as always requiring proof . . . that the plaintiff's claim came about because of the defendant's in-state conduct.").

"[S]pecific jurisdiction requires us to analyze jurisdictional contacts on a claim-by-claim basis." *Moncrief Oil*, 414 S.W.3d at 150 (citing *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 660 (Tex. 2010)). A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim. *Id.* This is due to the distinction between general jurisdiction and specific jurisdiction: "If a defendant does not have enough contacts to justify the exercise of general jurisdiction, the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts." *Id.* (internal quotation and citation omitted). A court, however, need not address contacts on a claim-by-claim basis if all claims arise from the same forum contacts. *Id.* at 150–51.

### D. The exercise of personal jurisdiction must comport with fair play and substantial justice.

"Once minimum contacts have been established, we must still consider whether, for other reasons, exercising jurisdiction over the nonresident defendant would nevertheless run afoul of 'traditional notions of fair play and substantial

9

justice.'" *Luciano*, 625 S.W.3d at 18 (quoting *Int'l Shoe*, 326 U.S. at 316). "Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 878 (Tex. 2010) (quoting *Guardian Royal Exch. Assurance, Ltd. v. Eng. China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)). "We consider the nonresident defendant's contacts in light of (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of several states in furthering fundamental substantive social policies." *Luciano*, 625 S.W.3d at 18.

## III. General personal jurisdiction does not exist in this case.

On appeal, Weeks Marine argues that the trial court lacked general jurisdiction because it is not "at home" in Texas. We agree. Undisputed evidence showed that Weeks Marine is incorporated in New Jersey, where its principal place of business was located.

In his live pleading, Carlos alleged that Weeks Marine was "doing business in the State of Texas for the purpose of accumulating monetary profit," and it had a registered agent for service of process in Texas. Under the long-arm statute, "doing

10

business" in Texas includes "recruit[ing] Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state." TEX. CIV. PRAC. & REM. CODE § 17.042(3). Carlos's jurisdictional evidence showed that Weeks Marine recruited Texas residents for employment, and, in the absence of findings of fact, we take this evidence as true. Thus, we conclude that Weeks Marine conducted business in Texas within the meaning of the long-arm statute.

Conducting business in Texas and having a registered agent for service of process are not, alone, enough to confer general jurisdiction. *See Ford Motor Co.*, 141 S. Ct. at 1024; *Daimler*, 571 U.S. at 137. *Cf. Asshauer v. Glimcher Realty Tr.*, 228 S.W.3d 922, 933 (Tex. App.—Dallas 2007, no pet.) ("[H]aving a registered agent and being registered to do business in Texas only potentially subjects a foreign corporation to jurisdiction in the state."). Other jurisdictional facts alleged in Carlos's live pleading relate to recruiting, hiring, and training employees in Texas for its dredging division.

Weeks Marine attached to its special appearance an affidavit from Teresa B. Olivo, who worked for Weeks Marine as an Occupational Injury and Claims Manager. She averred that Weeks Marine's business included construction, dredging, towing, heavy lifting, salvage, stevedoring, and tunneling services throughout North America and internationally. She stated that the sole Texas office operates Weeks Marine's construction operations. She also stated that in the

11

previous five years, only 8% of Weeks Marine's projects had been located in Texas, and only about 12% of its revenue was attributable to those projects. Carlos's evidence did not contest or negate these jurisdictional facts.

The trial court did not issue findings of fact or conclusions of law, and it did not specify whether it had denied the special appearance based on general or specific jurisdiction. We conclude, however, that the appellate record cannot support an implied finding that Weeks Marine is "at home" in Texas when it conducted a minority of its business activities in Texas, was incorporated in New Jersey, and maintained its principal place of business in New Jersey. *See Ford Motor Co.*, 141 S. Ct. at 1024; *Daimler*, 571 U.S. at 137; *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

## IV.    Specific personal jurisdiction exists in this case.

Weeks Marine argues that there is no specific jurisdiction because Carlos's claims do not arise from or relate to its contacts with Texas.[1] Weeks Marine maintains that its contacts with Texas are insufficient to satisfy the due process

---

[1]    Weeks Marine argued that Carlos's claims do not "arise from **and** relate[] to" its contacts with Texas. (Emphasis added.) This conjunctive recitation of the standard for our minimum contacts analysis contradicts is inconsistent with the United States Supreme Court, which has explained that the inquiry into whether a cause of action arises from or relates to a nonresident defendant's forum contacts is disjunctive. *See Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1026 (2021) ("[O]ur most common formulation of the rule demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum.'").

standard and that it merely employed "someone from Texas nearly twenty years prior," and provided some training to the employee when he happened to be on a vessel in Texas waters.

Carlos pleaded claims for damages from two on-the-job injuries, and he pleaded a statutory claim for maintenance and cure, alleging that Weeks Marine's failure to timely pay maintenance and cure caused him additional damages. These claims, though distinct, are related, and we conclude that they both arise from the same forum contacts made by Weeks Marine. We therefore do not need to address Weeks Marine's forum contacts on a claim-by-claim basis. *See Moncrief Oil*, 414 S.W.3d at 150–51.

### A. Weeks Marine had sufficient minimum contacts to satisfy the requirement for specific personal jurisdiction.

Some of the jurisdictional facts in this case are disputed, and the trial court did not issue findings of fact and conclusions of law. Therefore, in determining whether the record shows that Weeks Marine had sufficient minimum contacts with Texas to confer specific personal jurisdiction on the court, we must infer that the trial court found as true facts that support its ruling and are supported by the record. *See Moncrief Oil*, 414 S.W.3d at 150.

#### 1. Purposeful availment

The first component of minimum contacts is purposeful availment. We consider actions intentionally taken by Weeks Marine by which it sought some

13

benefit, advantage, or profit. *See Burger King*, 471 U.S. at 473, 475; *Moncrief Oil Int'l*, 414 S.W.3d at 151.

Carlos's affidavit showed:

- Weeks Marine reached out to Carlos, a Texas resident, after it acquired T. L. James to recruit Carlos to work for Weeks Marine.

- Weeks Marine made contingent and final offers of employment to Carlos in Texas.

- Weeks Marine paid for Carlos to undergo a preemployment physical and drug test in Texas.

- Weeks Marine paid Carlos a per diem to cover his travel costs between his home in Texas and the jobsites.

- Weeks Marine contacted Carlos in Texas between 20 and 27 times over approximately 15 to 20 years to recruit him for jobs. Each time, Carlos accepted the offers of employment in Texas, and each time, Weeks Marine paid for him to have a physical and drug test in Texas.

- Weeks Marine recruited other Texas residents for employment.

- Weeks Marine recruited and hired Salazar, a Texas resident, who was Carlos's supervisor at the time of the alleged on-the-job injuries.

- Weeks Marine provided testing and training in Texas on approximately an annual basis.

- Weeks Marine conducted other training in Texas.

- Weeks Marine paid Carlos in Texas, where Carlos's bank account was located.

- Weeks Marine agreed that, if Carlos was injured while working for Weeks Marine, all of his medical care would take place in Texas.

- Weeks Marine hired Carlos for at least one project in Texas.

14

In addition, the same evidence that Weeks Marine relied on to avoid general personal jurisdiction is some evidence that Weeks Marine purposefully availed itself of conducting business in Texas, including earning 12% of its revenue in Texas. Weeks Marine also conceded that it had made some maintenance and cure payments to Carlos in Texas.

In *Hall v. Environmental Chemical Corp.*, 64 F. Supp. 2d 638 (S. D. Tex. 1999), the plaintiff, a resident of Galveston County, was injured while working aboard a barge chartered by Environmental Chemical and located on an island south of Hawaii. 64 F. Supp. 2d at 639. He returned to Texas, where he received medical care, and he filed suit when Environmental Chemical discontinued "maintenance and cure" payments. *Id.* The district court found that evidence supported specific personal jurisdiction based on the following facts that showed Environmental Chemical's purposeful availment of the Texas forum:

- Environmental Chemical made contact with Hall, a Texas resident, in Texas to recruit him to work.

- The evidence was conflicting, but evaluating the facts in a light most favorable to the plaintiff, the court determined that Environmental Chemical's contact with Hall was not limited to a single act of recruitment.

- Environmental Chemical mailed an employment contract to Hall's home in Texas.

- Environmental Chemical paid for Hall's transportation and lodging costs to attend training outside of Texas.

15

- Environmental Chemical sent paychecks to Hall's residence in Texas.

- Environmental Chemical paid for some medical treatment in Texas before terminating the maintenance and cure payments.

- Environmental Chemical again reached out to recruit Hall for work while he was recovering in Texas.

*Id.* at 642–43.

Weeks Marine's contacts with Texas are similar to those made by Environmental Chemical. Both nonresident defendant companies contacted a Texas resident to recruit him for employment. In both cases, the evidence supported a finding that there was more than one act of recruiting. Both Weeks Marine and Environmental Chemical offered the Texas resident employment while the resident was in Texas, and both paid for transportation and lodging to facilitate out of state training. Both sent paychecks to the resident in Texas. Both paid for some medical treatment in Texas before terminating the maintenance and cure payments. We conclude that the jurisdictional evidence supports a finding that Weeks Marine purposefully availed itself of the privilege of conducting activities in Texas.

### 2. Relatedness

Having concluded that Weeks Marine purposefully availed itself of the Texas forum, we must determine whether Carlos's claims arise from or are related to the contacts Weeks Marine made with Texas. *See Luciano*, 625 S.W.3d at 18.

16

In its brief, Weeks Marine argues that Carlos's suit does not "arise from and relate to" Weeks Marine's contacts in Texas. Relying on both federal and state precedent, Weeks Marine asserts that there must be a substantial connection between the litigation and the forum state. *See Walden v. Fiore*, 571 U.S. 277, 283 (2014); *Moki Mac River Expeditions*, 221 S.W.3d at 585. Weeks Marine maintains that the "alleged actionable conduct and the alleged actionable harm occurred, if at all, in Louisiana and not in Texas," and, therefore, there was no substantial connection between its contacts with Texas and the subject of the litigation. In making this argument, Weeks Marine collapses the disjunctive relatedness requirement—that the litigation "arise out of **or** relate to the defendant's contacts with the forum"—into a single requirement—that the litigation both arise out of and relate to the defendant's contacts with the forum. *See Ford Motor Co.*, 141 S. Ct. at 1026; *Moncrief Oil*, 414 S.W.3d at 150. Weeks Marine's argument would impose a duty on Carlos to show a direct causal relationship between the injuries Carlos allegedly sustained and the contacts made by Weeks Marine in Texas. In *Ford Motor Company*, the U.S. Supreme Court rejected the need to show a direct causal relationship, saying: "None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Ford Motor Co.*, 141 S. Ct. at 1026; *see Luciano*, 625 S.W.3d at 18 (acknowledging and applying standard).

Carlos has alleged that he was injured in two on-the-job incidents because Salazar, his supervisor, ordered him to take unsafe actions. He alleges that it was Weeks Marine's decision to recruit workers from Texas and failure to properly train them that led to his injuries. Weeks Marine's contacts with Texas relate to Carlos's claims because Salazar lives in Texas, was recruited in by Weeks Marine in Texas, and received training from Weeks Marine in Texas. Weeks Marine's contacts with Texas also relate to Carlos's maintenance and cure claims because Weeks Marine promised to pay maintenance and cure in Texas when it recruited Carlos in Texas and because it concedes that it made some maintenance and cure payments to Carlos in Texas. Recruiting Texas residents for employment inside or outside of Texas is statutorily defined as conducting business in Texas and creates a strong relationship among Weeks Marine, Carlos, and Texas. *See* TEX. CIV. PRAC. & REM. CODE § 17.042(3); *see also Ford Motor Co.*, 141 S. Ct. at 1019 (discussing strong relationship among litigants and forum). We hold that the evidence supports a conclusion that Weeks Marine has sufficient minimum contacts to support specific jurisdiction in Texas.

**B.    The exercise of specific jurisdiction does not offend traditional notions of fair play and substantial justice.**

Having concluded that the evidence satisfies the minimum contacts prong of the federal due process test for a state to assert personal jurisdiction over a nonresident defendant, we consider the second prong: whether the exercise of

18

personal jurisdiction will offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co.*, 326 U.S. at 316; *Old Republic*, 549 S.W.3d at 559. "The defendant bears the burden of presenting a compelling case that the presence of some consideration would render the exercise of jurisdiction over it unreasonable." *PetroSaudi Oil Servs. Ltd. v. Hartley*, 617 S.W.3d 116, 141 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *see Hoagland v. Butcher*, 474 S.W.3d 802, 816 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (same).

The following factors are relevant to our determination of whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice:

(1)   the burden on the defendant;
(2)   the interests of the forum in adjudicating the dispute;
(3)   the plaintiff's interest in obtaining convenient and effective relief;
(4)   the international judicial system's interest in obtaining the most efficient resolution of controversies; and
(5)   the shared interest of the several nations in furthering fundamental substantive social policies.

*Cornerstone Healthcare Grp. Hldg., Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 74 (Tex. 2016); *Moncrief Oil*, 414 S.W.3d at 155. "If a nonresident has minimum contacts with the forum, rarely will the exercise of jurisdiction over the nonresident not comport with traditional notions of fair play and substantial justice." *Moncrief Oil*, 414 S.W.3d at 154–55.

19

Weeks Marine has presented no argument on appeal that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. Instead, it has centered its arguments on the first prong. In the trial court, Weeks Marine argued that litigating this case in Texas would offend traditional notions of fair play and substantial justice because it would undermine the law of specific jurisdiction in regard to the minimum contacts and relatedness inquiry. *See* Clerk's R. 228–29. Weeks Marine did not explain why litigating in Texas would increase its burden, or why Texas's interest in adjudicating this dispute and Carlos's interest in obtaining convenient and effective relief are low. Instead, it argued that an exercise of personal jurisdiction in this case would be based entirely on Carlos's Texas residency. We disagree.

The evidence demonstrates that the exercise of specific personal jurisdiction would be based on more than Carlos's Texas residency. Carlos's Texas residency weighs in favor of personal jurisdiction because he has a strong interest in obtaining convenient and effective relief. *See Cornerstone Healthcare Grp.*, 493 S.W.3d at 74 (identifying factors relevant to fair play and substantial justice). He has received treatment in Texas, and therefore his treating physicians are also located in Texas. *See Luciano*, 625 S.W.3d at 19 ("Doctors who treated the Lucianos after the alleged injuries are also in Texas."). Weeks Marine also had numerous relevant forum contacts. The evidence shows that Weeks Marine purposefully availed itself of the

20

privilege of doing business in Texas by recruiting and hiring Texas residents. Because Weeks Marine was doing business in Texas within the meaning of the long-arm statute, Texas has a strong interest in adjudicating the dispute. *See* TEX. CIV. PRAC. & REM. CODE § 17.042(3); *Luciano*, 625 S.W.3d at 19 (exercise of privilege of doing business in forum state gives rise to obligation to respond to suit "which cannot be said to be undue"). Weeks Marine's evidence further supports a conclusion that it would not be burdensome for it to litigate these claims in Texas. *See Cornerstone Healthcare Grp.*, 493 S.W.3d at 74. In addition to its actions of recruiting and hiring Texas residents, Weeks Marine's evidence shows that it regularly conducts other business in Texas as well. It maintains a construction operations office in Texas, and over the past five years, 8% of its projects—yielding 12% of its revenue—were located in Texas. These factors support a conclusion that the exercise of specific jurisdiction does not offend traditional notions of fair play and substantial justice.

Weeks Marine has presented no compelling argument or evidence to justify why this is the rare occasion in which a nonresident's minimum forum contacts have been established but the exercise of personal jurisdiction nevertheless offends traditional notions of fair play and substantial justice. *See Moncrief Oil*, 414 S.W.3d at 154–55; *PetroSaudi Oil Servs.*, 617 S.W.3d at 141.

21

We conclude that specific personal jurisdiction over Weeks Marine exists in this case, and we hold that the trial court did not err by denying the special appearance.

## Conclusion

We affirm the interlocutory order of the trial court. All pending motions are dismissed as moot.

Peter Kelly
Justice

Panel consists of Justices Kelly, Guerra, and Farris.